UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HECTOR EDUARDO PEREZ
VILCHEZ,

        Petitioner,

      v.

SECRETARY KRISTI NOEM,
ACTING DIRECTOR TODD M.
LYONS, ALLIGATOR ALCATRAZ
WARDEN,

        Respondents,

Case No. 2:26-cv-391-KCD-DNF

                   /

## ORDER

Petitioner Hector Eduardo Perez Vilchez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 4.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued detention without a hearing contravenes the Fifth Amendment. Respondents oppose the petition. (Doc. 8.) For the reasons below, the petition is **DENIED**.

### I. Background

Vilchez was caught crossing the U.S. border in 2020, given a "Notice to Appear," and sent back into Mexico under "the Migrant Protection Protocols."

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

(Doc. 8-1 at 2.) Several months later, he was removed from the MPP and paroled into the United States "to await court hearings." (*Id.*)

Vilchez remained in the country for several years and pursued asylum. Then came the criminal charges. He was arrested for "six (6) counts of Lewd Lascivious Battery Sexual Activity and one (1) count of Sex Offense: Video Voyeurism Disseminate." (Doc. 8-1 at 4.) Those severe charges prompted federal authorities to step back in. ICE revoked his parole, took him back into federal custody, and placed him at the Florida Soft Side South Detention Center pending removal. (Doc. 4 at 1.) Vilchez does not yet have a removal order.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

Vilchez's habeas petition raises two substantive claims. First, his detention violates his due process rights. (Counts I and III.) Second, his detention violates the INA because he is eligible for a bond hearing, yet ICE is withholding such relief. (Count II). To make sense of it all, it helps to tackle these issues out of order, beginning with the INA.

### A. INA

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General."

3

8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Vilchez, he is entitled to a bond hearing under § 1226. (Doc. 4 at 12.) And the Government's "failure to correctly classify [his] detention renders his confinement unlawful." (*Id.*) But this argument runs headlong into the facts. Vilchez was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Vilchez concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

4

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Jennings*, 583 U.S. at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Vilchez may have physically spent time in the interior of the United States after his release on parole, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Vilchez—who has never been legally admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt

entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Vilchez's continued detention without a bond hearing cannot be in violation of the INA.

## B. Due Process

Even if Vilchez's detention without a bond hearing is authorized by the INA, he argues it violates the Due Process Clause. (Doc. 4 at 11-12, 13-14.) The Court cannot agree.

The Fifth Amendment requires the government to provide due process before depriving a person of life, liberty, or property. *Dep't of State v. Munoz*, 602 U.S. 899, 909-10 (2024). It is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]his Court has held that the Due Process Clause protects an alien subject to a final order of deportation.").

At the same time, the Supreme Court has repeatedly acknowledged that "the nature of protection [under the Due Process clause] may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694; *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . . [H]owever, once an alien

6

gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.").

For noncitizens who arrive at the border without lawful status—even if they manage to physically enter the country—the Due Process Clause is constrained. The Supreme Court's decision in *Dep't of Homeland Sec. v. Thuraissigiam* shows exactly how this works. 591 U.S. 103 (2020). The petitioner in that case tried to cross the border illegally and was apprehended a mere 25 yards into the United States. The government placed him in expedited removal proceedings under § 1225(b)(1) and kept him in continuous custody. *Id.* at 114. When his asylum claim failed, he turned to federal court. He filed a habeas petition asking for a do-over—a court order directing the government to give him another opportunity to apply for asylum relief. *Id.* at 115.

The Supreme Court said no, holding (among other things) that the Due Process Clause did not guarantee the petitioner judicial review of his asylum denial. *Id.* at 139. The Court explained that granting procedural due process rights to arriving aliens beyond what Congress had prescribed "is contrary to more than a century of precedent." *Id.* at 138. That precedent establishes a stark but unyielding rule: for foreigners who have never been admitted into the country, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Id.*

(emphasis added). This approach stems from a simple constitutional reality—the political branches hold plenary authority over our borders. And if you have the sovereign power to keep someone out, you necessarily possess the power to set the procedural ground rules for making that determination. *Id.* at 139.

The takeaway from *Thuraissigiam* is plain: an arriving alien "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022) (explaining that any rights "an alien seeking initial admission to the United States" may have "in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause").

Aliens "who arrive at ports of entry" and are released into the United States pending removal, as occurred here, "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139; *see also Heng Meng Lin v. Ashcroft*, 247 F. Supp. 2d 679, 683 (E.D. Pa. 2003) ("An excludable alien may be physically allowed into the country while his admission is being considered, but under the entry fiction is still considered to be at the border awaiting entry."). That means Vilchez is legally no different from an applicant standing at the border, leaving him to claim "only those rights regarding admission that Congress has provided by statute."

*Jandres-Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at *12 (N.D. Tex. Jan. 23, 2026); *see also Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025); *Ayala v. Harper*, No. 1:26-CV-204-CLM-GMB, 2026 WL 501113, at *10 (N.D. Ala. Feb. 23, 2026).

Section 1225 provides the procedural boundaries Congress set for "applicants for admission" like Vilchez. "[A]liens falling within the scope of § 1225(b)(2) shall be detained for a [removal] proceeding." *Jennings*, 583 U.S. at 297. The statute "mandate[s] detention of applicants for admission until certain proceedings have concluded" and says nothing "whatsoever about bond hearings." *Id.* Since Congress drew the blueprint for arriving aliens, choosing mandatory detention, Vilchez cannot invoke the Fifth Amendment to demand a bond hearing. For an applicant legally standing at the nation's door, the statutory text provides the beginning and the end of the constitutional inquiry. That means Vilchez's due process challenge necessarily fails. *See Arana v. Arteta*, No. 1:26-CV-240-GHW, 2026 WL 279786, at *5-6 (S.D.N.Y. Feb. 3, 2026).

In *Zadvydas*, the Supreme Court held that the government cannot hold an alien indefinitely under 8 U.S.C. § 1231(a)(6)—the statute governing detention *after* a final order of removal has been entered. To avoid serious constitutional concerns, the Court read an implicit time limit into that

9

statute, requiring release if removal is no longer reasonably foreseeable. *Zadvydas*, 533 U.S. at 689.

But *Zadvydas* provides Vilchez no help here for a simple and fundamental reason: he is detained under a completely different statutory scheme. Vilchez does not yet have a final order of removal. Instead, because his parole was terminated, he is treated as an applicant for admission detained pending the outcome of his removal proceedings under 8 U.S.C. § 1225(b). *See Diaz Patino v. Villegas*, No. 1:25-CV-276-H, 2026 WL 673166, at *4 (N.D. Tex. Mar. 9, 2026). And the Supreme Court has rejected the attempt to transplant *Zadvydas*'s implicit time limits onto § 1225(b). *Jennings*, 583 U.S. at 296-99; *see also Erbite v. Ripa*, No. 2:26-CV-558-JES-NPM, 2026 WL 776143, at *2 (M.D. Fla. Mar. 19, 2026).

The Court in *Jennings* explained that the two statutes are drafted entirely differently. The post-removal statute at issue in *Zadvydas* states that the government "may" detain certain aliens, a permissive word that left the Court room to impose a reasonable temporal limit. *Jennings*, 583 U.S. at 299-300. But § 1225(b) is unequivocal. It mandates that applicants for admission "shall be detained" until their removal proceedings conclude. *Id.* at 297. As the Supreme Court put it, the text of § 1225(b) says nothing "whatsoever about bond hearings" and leaves no interpretive room for a *Zadvydas*-style saving construction. *Id.*; *see also Gueye v. Sessions*, No. 17-

10

62232-CIV, 2018 WL 11447946, at *2 (S.D. Fla. Jan. 24, 2018) ("*Zadvydas* did not analyze detention in the context of expedited removal proceedings.").

To be sure, *Jennings* did not resolve every question in this arena. When the Supreme Court declined to rewrite § 1225 to include an implicit bond hearing, it explicitly left for another day the constitutional fallback: whether prolonged mandatory detention under that statute might independently violate the Due Process Clause. *Id.* at 312. And immediately following *Jennings*, some courts did find that aliens proceeding under § 1225(b) have at least some base level of due process rights against unreasonable detention. *See, e.g.*, *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1147 (9th Cir. 2020) (upholding a preliminary injunction to a class of §1225(b) detainees because "plaintiffs were likely to succeed on their claim that they are constitutionally entitled to individualized bond hearings before a neutral decisionmaker").

But the Supreme Court has since firmly closed that door in *Thuraissigiam*. That case shows how the Due Process Clause operates—or, more accurately, how it is constrained—when it comes to individuals, like Vilchez, who have not been lawfully admitted.

The interplay between the two decisions is straightforward. *Jennings* hypothesized that, at some point, prolonged detention might offend due process. But *Thuraissigiam* clarified exactly what process is "due" to an

arriving alien. As mentioned, the Court reaffirmed its "century-old rule" that "Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Thuraissigiam*, 591 U.S. at 107, 139.

That rule resolves the constitutional question here. Because Vilchez's temporary parole was terminated, the law treats him as though he is still standing at the border, knocking on the door. *Id.* at 139 ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border."). For individuals in this posture, the Due Process Clause is not a roving mandate for federal judges to construct a balancing test. Instead, an arriving alien's constitutional rights are coextensive with his statutory rights. And because Congress unequivocally mandated detention for arriving aliens in § 1225 without providing for a bond hearing, the Due Process Clause does not step in to supply one. In this specific context, the statutory floor is also the constitutional ceiling. *See, e.g.*, *A.E. v. Powell*, No. 7:26-CV-337-EGL-NAD, 2026 WL 782294, at *7 (N.D. Ala. Mar. 19, 2026); *de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *6 (D. Kan. June 24, 2020).

One can certainly understand Vilchez's frustration with his current position, waiting in a detention cell for a year while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Vilchez's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

Two final issues. First, Vilchez protests that the Government failed to follow the procedures required to revoke his release under 8 C.F.R. §§ 241.4 and 241.13. (Doc. 4 at 11.) But those regulations apply to a completely different stage of the immigration process. They dictate how the government handles noncitizens who already have a final order of removal. *See* 8 C.F.R. §§ 241.4(a), 241.13(a). Vilchez does not. His proceedings are ongoing, so those post-order regulations offer him no relief.

Second, Vilchez argues that his detention violates the Fifth Amendment because it "serves no legitimate remedial or regulatory purpose

13

and removal is not imminent." (Doc. 4 at 14.) As mentioned, the Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate

14

immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Vilchez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. The INA specifically authorizes the Government to detain noncitizens while they await a final removal determination. *See* 8 U.S.C. §§ 1225(b), 1226(a). And the reasons for keeping Vilchez locked up are perfectly legitimate regulatory goals, not punitive ones. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). The Government revoked Vilchez's parole because of the state criminal charges and its decision to move forward with removal. Returning him to custody thus serves a recognized objective.

## IV. Conclusion

Based on the record provided, Vilchez's detention does not violate the INA or the Constitution. He is thus not entitled to habeas relief, and the habeas petition (Doc. 4) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on April 22, 2026.

Kyle C. Dudek
United States District Judge